UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIVE AMERICAN ARTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09-cv-3879 |
| v. ) | |
| ) | Judge John W. Darrah |
| CONTRACT SPECIALTIES, INC. d/b/a ) | |
| SUNBURST COMPANIES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Native American Arts ("NAA") sued Contract Specialties, Inc. d/b/a Sunburst Companies ("Sunburst") under the Indian Arts and Crafts Act of 1990 and the Indian Arts and Crafts Enforcement Act of 2000 (collectively, "IACA"), 25 U.S.C. § 305 *et seq.* Sunburst moved to dismiss NAA's complaint for lack of personal jurisdiction, improper venue, violation of the Equal Protection Clause, lack of standing, and failure to plead a cause of action.[1] In the alternative, Sunburst moves to transfer this action to the District of Rhode Island. Sunburst's Motion to Dismiss for lack of personal jurisdiction is granted, and the remainder of Sunburst's Motion is denied as moot.

## BACKGROUND

The following facts are taken from NAA's Complaint and from affidavits submitted by each party in support of or in opposition to Sunburst's Motion to Dismiss. (Sunburst submitted an affidavit of its president, Evelyn A. Guarino; and NAA submitted

---

[1] Because of Sunburst's equal-protection challenge, the United States was granted leave to intervene in this action and filed a Memorandum in Support of the Constitutionality of the IACA.

an affidavit of its president, Matthew J. Mullen.) NAA is an Indian-owned arts and crafts organization involved in the manufacture, distribution, and sale of authentic Indian arts and crafts and is headquartered in the Northern District of Illinois. (Compl. ¶ 3.) NAA is composed of members of the Ho-Chunk Nation, an Indian tribe recognized by the United States Government. (*Id.*) Michael Mullen, president of NAA, is also the attorney who filed this action.

Sunburst is a Rhode Island corporation principally located in Providence, Rhode Island. (*Id.* ¶ 4.) Sunburst is a wholesaler and supplier of arts, crafts, and artworks throughout the United States, including products of a traditional Indian style. (*Id.*) Sunburst is not an Indian arts and crafts organization within the terms of 25 U.S.C. § 305e. (*Id.* ¶ 7.)

Since as early as June 28, 2005, Sunburst has directly or indirectly offered, displayed, advertised, and sold various goods in a manner that falsely suggests they are Indian produced in violation of the IACA. (*Id.* ¶¶ 8-10.) All of the marketing, advertising, offers, displays, and purchases giving rise to claims in this case occurred in Illinois, where NAA also advertises, markets, and sells similar competitive products. (Mullen Aff. ¶ 8.)

On August 21, 2008, NAA telephoned Sunburst's Rhode Island office and requested a catalog. (Guarino Aff. ¶¶ 16, 17.) Sunburst shipped a catalog that day. (*Id.* ¶ 17.) On September 3, 2008, NAA again telephoned Sunburst's Rhode Island office and placed an order for $680.87 worth of Sunburst's merchandise. (*Id.* ¶ 17.) All but one of the goods were shipped to Illinois from Rhode Island on September 17, 2008. (*Id.* ¶ 17;

2

Mullen Aff. ¶ 17.) The remaining good was shipped into Illinois on or about October 27, 2008. (Mullen Aff. ¶ 17.)

Sunburst is incorporated and headquartered in Rhode Island. (Guarino Aff. ¶ 6.) It has no stores, offices, telephones, mailing addresses, bank accounts, or employees in Illinois. (*Id.* ¶¶ 4, 6.) No shareholders live in Illinois, and no board meetings have ever been conducted in Illinois. (*Id.* ¶ 7.) Sunburst's sole office is located in a single building in Rhode Island along with its sole factory and warehouse. (*Id.* ¶ 9.) All of Sunburst's corporate records and documents are located in Rhode Island. (*Id.* ¶ 8.) Sunburst sells to retailers; it does not sell to the general public and has no significant customer presence in Illinois. (*Id.* ¶¶ 5, 14.) Sunburst does not maintain or operate a website. (*Id.* ¶ 13.) It has never advertised its products at any trade show, convention, or gathering in Illinois. (*Id.* ¶ 13.) Sunburst does not mass mail its product brochures and has never purposefully directed its advertising to Illinois. (*Id.* ¶ 13.) Sunburst does, however, send catalogs and flyers to existing customers (*Id.* ¶ 13), including to some in Illinois (Compl. ¶ 4).

Since its formation in 1971, Sunburst has sold products to just seven retailers in Illinois (not counting NAA). (Guarino Aff. ¶¶ 5, 14.) With the exception of NAA, none of those retailers has ever purchased goods of the type identified in NAA's Complaint. (*Id.* ¶ 14.) Historically, Illinois sales have accounted for less than one percent of Sunburst's gross sales. (*Id.* ¶ 15.)

On January 26, 2009, NAA filed this suit under the IACA, which NAA characterizes as a truth-in-marketing statute designed to stop the false suggestion that products are Indian made when they are not. (Opp'n Br. at 1.) NAA claims it has been

3

damaged as a result of Sunburst's actions, suffering lost sales, downward pressure on prices, and loss of goodwill and reputation. (Compl. ¶ 22.) NAA claims it is entitled to damages in excess of $14 million. (*Id.* ¶ 31.)

## LEGAL STANDARD

A defendant may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Once a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction over the defendant. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) (*RAR*). Unless the court deems it necessary to hold an evidentiary hearing on the issue, the plaintiff need only make a *prima facie* case for personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 & n.13 (7th Cir. 2003) (*Purdue*). When considering a Rule 12(b)(2) motion, a court may receive and weigh affidavits. *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971). The court draws all reasonable inferences in favor of the plaintiff and resolves all factual disputes in its favor. *Purdue*, 338 F.3d at 783 & n.14.

A federal district court sitting in Illinois has personal jurisdiction over a nonresident party only if an Illinois state court would have jurisdiction over that party. *RAR*, 107 F.3d at 1275. A nonresident defendant may be sued in Illinois if (1) jurisdiction is authorized under the Illinois long-arm statute and (2) the defendant has minimum contacts with Illinois such that the exercise of jurisdiction would not violate due process. *FMC Corp. v. Varanos*, 892 F.3d 1308, 1310 (7th Cir. 1990). Because the Illinois long-arm statute now extends personal jurisdiction to the limits allowed under the

4

Due Process Clause of the 14th Amendment, the Court need only determine whether the exercise of personal jurisdiction in this case would be contrary to the United States Constitution. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002) (*Hyatt*).

Due process requires that a defendant, if not present in the state, "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 315 (1945) (*Int'l Shoe*) (internal quotation marks omitted). Minimum contacts can be demonstrated through facts supporting either general or specific jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & nn.8 & 9 (1984) (*Helicopteros*). Specific jurisdiction over a defendant exists when a suit arises out of or is related to the defendant's contacts with the forum; general jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the forum. *RAR*, 107 F.3d at 1277 (quoting *Helicopteros*, 466 U.S. at 416). A defendant's contacts cannot be merely random, fortuitous, or attenuated. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (*Burger King*). Rather, the defendant's conduct and connection with the forum state should be such that the defendant should reasonably anticipate being haled into court in the forum state as a result of those minimum contacts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (*World-Wide Volkswagen*).

5

## ANALYSIS

Sunburst contends it is not subject to the general or specific jurisdiction of this Court because it never purposefully availed itself of the privilege of doing business in Illinois. NAA does not argue that Sunburst is subject to the general jurisdiction of this court. (*See* Opp'n Br. at 9 ("NAA does not assert that Defendant does so much business in Illinois that it is equivalent to being 'present' here.").) Accordingly, the Court only addresses the question of whether it has specific jurisdiction over Sunburst for this particular case. Plaintiff bears the burden of demonstrating that Sunburst has minimum contacts with Illinois and that NAA's claims arise out of those contacts:

> Where the defendant's contacts are more limited, such that specific jurisdiction is the only option, the suit must "arise out of" or "be related to" these minimum contacts with the forum state. This nexus is important . . . because it aims to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Hyatt*, 302 F.3d at 716 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

NAA claims it has been aggrieved by Sunburst's IACA violations in an amount of over $14 million. According to NAA, this injury was manifested in the form of decreased sales, downward pressure on prices, and loss of goodwill and reputation. Sunburst contends it would defy logic for NAA to have incurred all of this damage from Sunburst's single, $680 sale of 55 products *to NAA* because NAA could not possibly be competitively injured through its own purchase of IACA-violating goods. But the Court does not read NAA's Complaint as claiming that all of NAA's alleged injuries arose out of that single transaction. Although NAA made only one purchase in September 2008, it

6

alleges that Sunburst's actions have carried on since as early as June 28, 2005 (*see, e.g.*, Compl. ¶ 11) and that it has been damaged by Sunburst's offers and sales of similar products to NAA's potential customers (Compl. ¶ 22). NAA also makes numerous allegations of "advertising injury" and "web-site injury" arising out of Sunburst's actions. (Compl. ¶¶ 23-27.)

Indeed, if Sunburst's only actionable conduct was the sale of $680 worth of product to NAA, NAA likely would not have standing to bring this action because it would have suffered no injury. *See United Transp. Union-Ill. Legislative Bd. v. Surface Transp. Bd.*, 183 F.3d 606, 610 n.2 (7th Cir. 1999) (stating that in order to have standing under Article III of the Constitution, plaintiff must demonstrate (1) that it personally suffered actual or threatened injury, (2) that injury is fairly traceable to defendant's conduct, and (3) that the injury is one that is likely to be redressed by a favorable decision).

NAA is aware of these Article III requirements, having previously had a case dismissed for lack of standing based on its failure to plead any injury. *See Native Am. Arts, Inc. v. Specialty Merch. Corp.*, 451 F. Supp. 2d 1080, 1082 (C.D. Cal. 2006) (*Specialty Merchandise*). In that case, the court observed that NAA's conclusory allegations of injury did not establish the requisite injury-in-fact element of standing. *Id.* The court specifically noted that even though the IACA may not require actual injury under its statutory-damages scheme, such proof is still required under Article III of the Constitution. *Id.* at 1083. Without some proof of injury, a plaintiff cannot maintain a suit in federal court. *Id.*

This is not to say that NAA lacks standing. In contrast to *Specialty Merchandise*, NAA *has* pleaded actual injury in this case. (*See* Opp'n Br. at 17 ("The Complaint alleges that Defendant offered, displayed for sale and sold arts and crafts products, which were falsely suggested to be Indian-made, directly and indirectly to NAA *and other consumers*.") (emphasis added).) Presumably, it is Sunburst's sales to other consumers that caused injury to NAA, and NAA's allegations of competitive harm are necessary to sustain its claim of actual injury.

The problem, for purposes of jurisdiction, is that NAA only made conclusory allegations that Sunburst's products are purchased in Illinois. (Compl. ¶ 4.) Although this may be sufficient if left unchallenged, Sunburst submitted an affidavit, stating that it has never purposefully directed advertising to Illinois and that none of its eight Illinois customers (with the exception of NAA) has ever purchased goods of the type at issue in this suit. (Guarino Aff. ¶¶ 13, 14.) NAA did not attempt to refute that evidence. Therefore, the Court does not view this as a genuine factual dispute that warrants an evidentiary hearing. *Cf. Hyatt*, 302 F.3d at 713 (stating that evidentiary hearing would be necessary to resolve disputed material facts relevant to jurisdiction). Because NAA also alleges that Sunburst sells products in the "traditional Indian style" throughout the United States, the absence of sales in Illinois does not doom NAA's claim. It does, however, doom NAA's assertion of personal jurisdiction over Sunburst.

NAA contends that jurisdiction may be based on the simple fact that Sunburst violated a federal statute by selling products in Illinois, drawing a parallel between IACA actions and actions for patent or trademark infringement to argue that the sale of products

in Illinois that violate a statute constitutes the commission of a tort in Illinois. (*See* Opp'n Br. at 5 (citing *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd.*, 34 F.3d 410 (7th Cir. 1994) (*Indianapolis Colts*)).[2]) But contacts resulting from the "unilateral activity of another party or third person" cannot be attributed to the defendant. *Burger King*, 471 U.S. at 475 (1985). And "[j]urisdiction may not be manufactured by the conduct of others." *Haggerty Enters., Inc. v. Lipan Indus. Co.*, No 00 C 766, 2001 WL 968592, at *4 (N.D. Ill. Aug. 23, 2001) (citing *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1127 (4th Cir. 1986) (holding defendant in breach-of-contract case was not subject to jurisdiction in the forum when defendant made no purposeful effort to develop a market for its products in that forum but "merely responded to [plaintiff's] unilateral inquiries."). Indeed, most courts considering issues of personal jurisdiction in patent and trademark cases have held that a plaintiff cannot manufacture jurisdiction against an out-of-state defendant by purchasing that defendant's products from the forum state:

> It is apparently not uncommon in trademark, copyright, and patent infringement cases for plaintiffs to attempt to base personal jurisdiction over defendants on sales made either to the plaintiffs themselves or to plaintiffs' counsel or representatives. As a result, there are a number of opinions addressing this issue. A review of these cases reveals that most courts, both in this circuit and elsewhere, have found that personal jurisdiction may not be based on contacts "manufactured" by a plaintiff in this way, though the courts have relied on different rationales for this conclusion.

---

[2] NAA also cites *Indianapolis Colts* and other cases as purported support for basing personal jurisdiction on harm suffered in the forum state from acts that occur outside the forum state. (Opp'n Br. at 5-6 & n.2.) But the "common thread" of these so-called "effects test" cases is the *intentional* infliction of harm to a plaintiff in the forum state. *Richter v. INSTAR Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1011 (N.D. Ill. 2009) (citation and internal quotation marks omitted). Here, NAA does not allege that Sunburst intentionally inflicted any harm on NAA.

9

*Chloe v. Queen Bee of Beverly Hills, LLC*, 571 F. Supp. 2d 518, 525 (S.D.N.Y. 2008) (compiling cases).

In *ISI Brands, Inc. v. KCC International, Inc.*, 458 F. Supp. 2d 81, 88-89 (E.D.N.Y. 2006), a district court held that the plaintiff could not "manufacture" a contact with the proposed forum by ordering goods from defendant and having them shipped into the forum state. The court considered it "beyond dispute" that jurisdiction cannot be manufactured by the plaintiff. *Id.* at 89 (citation omitted).

Similarly, in *McGill Technology Ltd. v. Gourmet Technologies, Inc.*, 300 F. Supp. 2d 501, 506 (E.D. Mich. 2004), the court found it did not have specific jurisdiction over the defendants accused of patent infringement. The court disregarded evidence that the defendants had issued price quotations for the allegedly infringing products in the forum state at plaintiff's request because such contacts were "manufactured by the unilateral acts of a plaintiff." *Id.* The court stated, "To hold otherwise would allow a plaintiff to manufacture jurisdiction over a non-resident defendant in any forum, regardless of how inconvenient, even when the defendant has not purposefully directed any activity toward the forum state." *Id.* (quoting *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 112 (D. Conn. 1998)).

And in *Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or. 1999), a district court found that a defendant did not subject itself to the jurisdiction of the court by selling a single compact disc to fulfill a direct order by an agent of the plaintiff:

> Defendants cannot be said to have "purposely" availed themselves of the protections of this forum when it was an act of someone associated with

> plaintiff, rather than defendants' Web site advertising, that brought defendants' product into this forum. Moreover, plaintiff's claims of trademark infringement and unfair trade practices do not arise from the sale of the compact disc to [plaintiff's agent]. The gravamen of both an infringement and an unfair competition claims [sic] is whether the defendant has created a likelihood of confusion. Plaintiff can hardly argue that such action "caused a likelihood of confusion" regarding plaintiff's and defendants' trade names; [plaintiff's agent] knew exactly with whom she was dealing and knew that defendants were not associated in any way with plaintiff.

(citations and internal quotation marks omitted).

Here, NAA tries to base jurisdiction on Sunburst's sale of products to NAA at NAA's request. NAA has been down this road before and knows the consequences of filing a case based on manufactured personal jurisdiction. *See Native Am. Arts, Inc. v. Moon Raven Int'l, Inc.*, No. 98 C 0434, 1998 WL 325245, at *4 (N.D. Ill. June 10, 1998) (*Moon Raven*). In *Moon Raven*, NAA's IACA claim was dismissed for lack of standing based on a pre-2000 version of the act, which only afforded standing to the Attorney General and Indian tribes (not to Indian arts-and-crafts organizations). *Id.* at *2-3. But after dismissing the IACA claim, the court determined it lacked personal jurisdiction over the defendant and dismissed NAA's unfair-competition claims as well. *Id.* at *1, 5. The court held that NAA did not meet its burden of showing the defendant purposefully availed itself of the privilege of conducting business in Illinois when the only transactions at issue in the litigation were both initiated by NAA. *Id.* The court also found the fact that Mullen observed the defendant's products at retail stores in Illinois was not adequate to support jurisdiction because it only suggests the defendant manufactured products that entered the stream of commerce and ended up in Illinois. *Id.* at *5.

11

Like in *Moon Raven*, the only transactions at issue in this litigation were initiated by NAA. And unlike *Moon Raven*, NAA does not even allege to have seen Sunburst's Indian-styled products for sale anywhere in Illinois. NAA's conclusory allegations that Sunburst sold to other Illinois consumers have been refuted by Sunburst's affidavit. Like it did in *Moon Raven*, NAA has failed to demonstrate that a nonresident defendant purposefully availed itself of the privilege of doing business in this state.

Despite the similarities between the two cases, NAA asks this Court not to follow *Moon Raven*, arguing that a string of unreported cases in which NAA was a plaintiff compels a different result. (*See* Opp'n Br. at 8 (citing *Native Am. Arts, Inc. v. Vaughn Commc'ns, Inc.*, No. 01-cv-5716 (N.D. Ill. Mar. 10, 2003) (*Vaughn*); *Native Am. Arts, Inc. v. Daniel Peterson*, No. 06-cv-5956 (N.D. Ill. Dec. 5, 2007) (*Daniel Peterson*); *Native Am. Arts, Inc. v. Novel Tees, Inc.*, No. 07-cv-2939 (N.D. Ill. Jan. 11, 2008) (*Novel Tees*)).) But none of those cases provides any reason for this Court not to follow the logic of *Moon Raven*. The *Vaughn* court specifically based jurisdiction on the defendant's active pursuit of sales in Illinois: "By defining [an independent salesman's] sales territory to include Illinois, and then mailing catalogs to Illinois companies, [defendant] cannot characterize its contacts with Illinois as being random, fortuitous or attenuated." *Vaughn*, at 7. The salesman in question testified that he sold the defendant's Indian products to several customers in Illinois. *Id.* at 4. Here, NAA does not allege that Sunburst actively pursued sales through an Illinois salesman. In *Daniel Peterson*, the court based its finding of jurisdiction on "[t]he fact that [defendant's] website is active, along with the fact that [defendant] sold and shipped the offending goods into the state of

12

Illinois." *Daniel Peterson*, at 5. Here, Sunburst has never maintained a website. And in *Novel Tees*, the court did not even address the issue of personal jurisdiction because the parties had expressly agreed that venue would be proper in Illinois. *Novel Tees*, at 1.

Disregarding NAA's conclusory allegations that Sunburst sold IACA-violating products to other Illinois customers – allegations that were refuted by Sunburst's affidavit – NAA's sole basis for jurisdiction is Sunburst's single transaction with NAA. This Court sees no reason not to follow *Moon Raven* and hold that asserting jurisdiction over the Defendant for shipping products into Illinois at NAA's request would offend "traditional notions of fair play and substantial justice." *Moon Raven*, 1998 WL 325245, at *5 (citing *Int'l Shoe*, 326 U.S. at 316).

## CONCLUSION

NAA's attempt to manufacture personal jurisdiction over Sunburst will not suffice to show that Sunburst established minimum contacts with this forum for purposes of this suit. This Court lacks jurisdiction over Sunburst, and Sunburst's Motion to Dismiss for lack of personal jurisdiction is granted. Sunburst's remaining motions to dismiss on other grounds and its motion to transfer are denied as moot.

Date: 1-28-10

JOHN W. DARRAH
United States District Court Judge

13